**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Charles Pickard, | No. CV-16-00729-TUC-RCC |
| Plaintiff, | **ORDER** |
| v. | |
| City of Tucson, et al., | |
| Defendant. | |

Pending before the Court is Defendant City of Tucson's ("City") Motion for Summary Judgment. (Doc. 34.) Only one claim remains: Count Two, alleging discrimination and retaliation under the Americans with Disabilities Act ("ADA"). (Doc. 1 at 14-15.) Plaintiff Charles Pickard claims that the City regarded his hand tremor as a disability and engaged in discriminatory and retaliatory actions based on this perceived disability. *Id*. at 14. These actions included: moving him from the Bomb Squad to Homeland Security;[1] temporarily prohibiting him from handling explosives and chemicals (*Id*. at ¶ 130); "requiring him to undergo a fitness for duty examination process at his own expense" (*Id.*); and groundlessly "requiring him to be driven by another Tucson Police Department ("TPD") officer . . . to a medical appointment relating to his tremor" (*Id*.). The

---

[1] This allegation is not included in Count Two of the Complaint, but Pickard seems to argue in his response to the Motion to Dismiss that the move encompasses his claim. In fact, his Complaint alleges that the move was retaliation for exercising his First Amendment rights, a claim that has already been dismissed with prejudice. (*See* Doc. 1 at 14 (Pickard's initial Count Two with no mention of move); Doc. 1 at 9 ¶ 85 (Pickard moved because of animosity between him and Sgt. Devine), Doc. 1 at 10 ¶ 89 (move was retaliation for exercising free speech); *but see* Doc. 43 at 11-14 (claiming move was retaliation for perceived hand tremor).)

parties have fully briefed the issue (Docs. 43, 47) and the motion is ripe for ruling. Upon review of the record the Court finds that Plaintiff has not raised a genuine issue of material fact demonstrating he is entitled to relief. The Court will grant Defendant's Motion.

**I. Summary Judgment Standard**

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non–moving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A material fact is one "that might affect the outcome of the suit under the governing law. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In addition, the dispute must be genuine; that is, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

Initially, the movant must demonstrate why there is no genuine issue of material fact by citing to pleadings, depositions, interrogatory answers, admissions, and affidavits in support, if available. *Celotex*, 477 U.S. at 323. If the movant has "the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). However, when the burden of proof is nonmovant's, "the moving party need only prove that there is an absence of evidence to support the non–moving party's case." *In re Oracle Corp. Secs. Litig.,* 627 F.3d 376, 387 (9th Cir. 2010).

If the moving party does not meet this initial burden, the non–moving party need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But, if the moving party has established that there is no genuine issue of material fact, then the non–movant must come forth with evidence that there is a genuine disputed factual issue that may change the outcome of the lawsuit in the non–movant's favor. *Anderson*, 477 U.S. at 248, 250; *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). This showing does not have to be unquestionable;

however, the non–movant "may not rest upon the mere allegations or denials of [his] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248; Fed.R.Civ.P. 56(e); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (nonmovant must present more than "some metaphysical doubt as to the material facts"); *see Varig Airlines v. Walter Kidde & Co.*, 690 F.2d 1235, 1238 (1982) (barren allegations do not raise genuine issue). For instance, a "conclusory, self–serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *Nilsson v. City of Mesa*, 503 F.3d 947, 952 n.2 (9th Cir. 2007). Speculation is also insufficient. *Nelson v. Pima Cmty. College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("mere allegation and speculation do not create a factual dispute for purposes of summary judgment"); *Soremekun*, 509 F.3d at 985 (same).Furthermore, "[l]ike affidavits, deposition testimony that is not based on personal knowledge and is hearsay is inadmissible and cannot raise a genuine issue of material fact sufficient to withstand summary judgment." *See Skillsky v. Lucky Stores, Inc.*, 893 F.2d 1088, 1091 (9th Cir. 1990).

In essence, there is no issue for trial unless the non–moving party has presented the court with sufficient, admissible evidence in its favor; if the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249–50.

**II.  Factual Summary**

Pickard's summary of the facts alleges that he suffers from a minor hand tremor that does not affect his ability to perform his job on the Bomb Squad as a Police Hazardous Devices Technician. (Doc. 43 at 3.) He states that in December 2012, he was informed by Chief of Police Kathy Robinson that another bomb technician had reported concern over whether Pickard's shaking hands were affecting his work. (*Id*. at 5; Doc. 1 at 8, ¶ 69.) At that time, no action was taken, Pickard was not required to submit to any physical tests, and Chief Robinson stated that "the issue had been thoroughly examined by the Chiefs and the City legal department and would not be raised again." (Doc. 1 at 9, ¶ 84.)

Pickard contends it was his supervisor, Sergeant Ardan Devine, who reported concern over Pickard's hand tremors. (*Id*. at 8, ¶ 74.) Sgt. Devine had become hostile toward Pickard for questioning TPD procedures, and Pickard believes Sgt. Devine improperly reported Pickard's hand tremors to try to remove him from duty. (Doc. 43 at 5.) Pickard claims that Sgt. Devine's hostility escalated to the point that Chief Robinson determined that she would need to take action. (Doc. 1 at 9, ¶ 76.) In April 2013, after a heated meeting involving Chief Robinson, Sgt. Devine, and Pickard, Chief Robinson transferred Pickard from Bomb Squad to Homeland Security stating "he had to be physically separated from Sgt. Devine." (*Id*. at 9, ¶ 85.) Liberally construed, Pickard's response contends that the City moved him because Sgt. Devine had convinced Chief Robinson that his hand tremors were a liability to TPD. (Doc. 43 at 12.) Pickard was not returned to the Bomb Squad until March 24, 2014, when Sgt. Devine retired from TPD. (Doc. 1 at 13, ¶ 118-19; Doc. 35-2 at 26, ln. 22-25.)

In September 2013, Pickard admits that during a NIEF demonstration course he spilled nitromethane, a liquid chemical. (Doc. 43 at 7.) He claims it was a minute spill and a common occurrence. (*Id*. at 14-15.) He did not believe the spill was caused by his tremor. (*Id*. at 7-8.) A week after the incident, he was informed that he would not be able to handle explosives or chemicals until he submitted to a fitness for duty exam. *Id*. at 8. At that time, the City precluded him from handling explosives or chemicals until he submitted to a fitness for duty examination wherein the City physician could evaluate him. (Id. at 8, Doc. 1 at 11, ¶ 99.)

The City physician evaluated Pickard on October 8, 2013. (Doc. 35-2 at 39-42.) Another TPD employee drove Pickard to the appointment, which he believed was unnecessary and discriminatory. (Doc. 1 at 12 ¶ 109.) The physician determined that Pickard's tremors would not likely prevent him from working on the Bomb Squad, but "due to the nature of the Officer's work duties, it would be . . . appropriate to refer [Pickard] for a . . . neurological evaluation." (Doc. 35-2 at 41.) Pickard claims he was forced to pay for the unnecessary neurological exam out of pocket. (Doc. 1 at 13, ¶ 115.) On December

10, 2013, the neurologist found no reason the tremors would cause problems with his work as a Hazardous Devices Technician. (Doc. 35-2 at 45.) As soon as Pickard submitted the neurologist and the City physician's conclusions to the City, he was permitted to again handle dangerous substances on January 7, 2014. (Doc. 1 at 13 ¶ 117; Doc. 35-2 at 23 ln. 17-23; Doc. 35-2 at 47.)

### III. The City's Motion for Summary Judgment

The City's Summary Judgment Motion attacks the adequacy of Pickard's claim for three reasons. First, the City argues Pickard has not shown that the City regarded him as disabled. (Doc. 34 at 4-5.) The move to Homeland Security was due to his conflict with Sgt. Devine, not because of a perceived impairment. Further, the City contends that the fitness for duty evaluation was initiated as a direct result of Pickard's spill, not because the City thought Pickard was disabled. Spills pose a significant safety concern specific to the Hazardous Devices Technician job, which involves delicate handling of explosives, chemicals, and weapons of mass destruction (*see* Doc. 35-2 at 58). (Doc. 34 at 8) The City attached reports from four separate co–workers describing their safety concerns over Pickard's handling dangerous chemicals and explosives because of the spill, and because of the mechanical accuracy needed for this particular job. (Doc. 35-2 at 49-55.)

Second, the City argues that Pickard has not shown he suffered an adverse action due to any perceived disability by the City. (Doc. 34 at 5.) As Pickard's own statements show, the temporary transfer to Homeland Security occurred because animus existed between Pickard and Sgt. Devine. (Doc. 44 at 14, ¶¶ 60-63.) The Complaint did not assert that the move to Homeland Security was because of his hand tremors and Pickard has not presented evidence that connects the move to anything related to his hand tremor, therefore, Pickard has failed to support his claim. (Doc. 47 at 6.) Furthermore, the move was not adverse because he maintained both his FBI certification as a Bomb Technician and his rank of Police Hazardous Device Technician. (Doc. 35-2 at 6.) The City also argues that by Pickard's own admission, the move was neither discriminatory nor adverse. Pickard explicitly indicated that the move to Homeland Security had resolved his issues with Sgt.

Devine and that he was happy with the outcome. (Doc. 35-2 at 46).

Third, the City contends that the fitness for duty examination was neither discriminatory nor retaliatory and was in accordance with ADA guidelines. It was initiated because the City had a valid concern that Pickard's recent spill could have been caused by his hand tremor that created a threat to himself and others. Moreover, it was not related to what Pickard believed was Sgt. Devine's attempts to use Pickard's tremors against him. Rather, the referral for an examination was based on several reports of the chemical spills, independent of Sgt. Devine. (*Id*. at 49-52.) The City attaches several documents that show how the reports of two employees, not Sgt. Devine, were submitted to Lieutenant Tosca, who also exhibited concern for the safety of Pickard and those around him. (*Id*. at 49-50.) The information was then passed on to Police Chief Ramon Bautista. Chief Bautista recommended restricting Pickard's ability to handle explosives until TPD could determine whether Pickard's tremors were such that he should no longer perform the job of explosives technician because they posed a safety hazard. (*Id*. at 52, ¶¶ 6-8.) Chief Bautista then submitted a report to Chief Robinson. (*Id*. at ¶ 6.) Nowhere in the chain of events did Sgt. Devine play a determining role in how Pickard was treated. As Chief Bautista's report indicates, "The concern at hand for Lieutenant Tosca, Sergeant Froebe and I, is the safety of Officer Pickard and everyone around him.[2] As an explosive ordinance technician, Officer Pickard should possess the physical ability to delicately handle explosive/corrosive material." (*Id*. at 52, ¶8; 57.)

Furthermore, the City's exhibits demonstrate that assisting Pickard to his appointment and requiring Pickard to pay for his neurological exam were not discriminatory, but rather standard procedure at the direction of the City of Tucson's Human Resources Workers Compensation division. (*Id*. at 37, 44.)

The City has met its initial burden, showing that there is no genuine issue whether

---

[2] Pickard also claims that Sgt. Devine forced Officer Lucas Gabbard to submit a report about the spill. (Doc. 43 at 8.) Not only are Gabbard's alleged statements incompetent hearsay for summary judgment, they are irrelevant. It was not Gabbard's report that was given to Chief Robinson for review and resulted in limiting Pickard's handling of explosives and chemicals. (Doc. 35-2 at 52 ¶¶ 6-8.) Petitioner has not demonstrated causation.

- 6 -

the City regarded his tremors disabling, but were valid concerns for safety. Furthermore, the City has shown that Pickard's statements in his Complaint link his move to Homeland Security to his volatile relationship with Sgt. Devine, and not to any discriminatory or retaliatory motive against him for a perceived disability. Also, the City has provided evidence that the fitness for duty examination was directly related to the spill incident, which reasonably unsettled staff who were worried about the Pickard's safety and the safety of those around him. The assessment was also connected to a necessary component of his job–the delicate handling of explosive and dangerous material. Therefore, the burden on summary judgment shifts to Pickard to "set forth specific facts showing that there is a genuine issue for trial." *See Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 586–87 n.11: Fed.R.Civ.P. 56(e).

**IV. Pickard's Response**

As a preliminary matter, Pickard's response provides only two exhibits in support: (1) his self–serving declaration containing allegations, speculative conclusions, and hearsay statements; and (2) TPD's guidelines for fitness for duty assessments.[3] The Court is inclined to grant summary judgment based on his complete lack of supporting evidence alone. Pickard's conclusory, self-serving, speculative, and hearsay allegations do not raise a genuine issue of material fact. *See Skillsky, Inc.*, 893 F.2d at 1091. Even addressing Pickard's responsive arguments, however, he has still failed to raise a genuine issue to overcome summary judgment.

Pickard claims there are several issues precluding summary dismissal. He alleges that there are genuine issues of whether (1) the City regarded him as disabled, (2) his perceived disability caused his transfer to Homeland Security, and (3) the fit for duty examination was discriminatory. (Doc. 43 at 16-17.)

As a preliminary matter, the Court will address Pickard's additional claim that there

---

[3] Pickard also attaches one page that is labeled: Exhibit A to Exhibit 1. The document states that it is a "Cover Slip Sheet for a DVD containing two video clip files." (Doc. 44-1 at 19.) He indicates he will provide the Court and the City with a copy of the DVD in the future. *Id*. No DVD was submitted to the Clerk of Court and the City contends that the DVD was never disclosed during discovery.

is a genuine issue as to whether Sgt. Devine's dislike of Pickard for filing a Wrongful Conduct claim against him and Sgt. Devine's desire to use his tremor as a disability motivated the City's "otherwise unexplained decision abruptly to transfer him." (*Id*. at 2.)

The Court will not consider Pickard's allegation against Sgt. Devine and the Wrongful Conduct complaint because it is irrelevant. The other claims in this matter (for retaliation in violation of the First Amendment and Sgt. Devine's withholding of overtime) were dismissed with prejudice. The remaining claim is against the City for discriminating and retaliating against him for a perceived disability by moving him and subjecting him to a medical exam, not for retaliation for a Wrongful Conduct complaint.

## V. ADA Discrimination Claim Standard

A petitioner who brings an employment discrimination claim under the ADA must show that he (1) is disabled; (2) is qualified; and (3) has suffered an adverse employment action by his employer because of his disability. *Bradley v. Harcourt, Brace, and Co.*, 104 F.3d 267, 271 (9th Cir. 1996). The ADA definition of "disabled" requires a plaintiff to demonstrate that either (a) he has a physical or mental impairment substantially limiting at least one major life activity; (b) there is a record of his impairment; or (c) he is "regarded as" having a physical or mental impairment. 42 U.S.C. § 12102; 29 C.F.R. §1630.2(g)(1). Major life activities include both performing manual tasks and working. 42 U.S.C. § 12102(2)(A).

"Regarding" a plaintiff as disabled "means that the individual has been subjected to an action prohibited by the ADA . . . because of an actual or perceived impairment." 29 C.F.R. § 1630.2(g)(1)(iii). This occurs "whether or not that impairment substantially limits, or is perceived to substantially limit, a major life activity. Prohibited actions include but are not limited to . . . demotion, placement on involuntary leave . . . exclusion for failure to meet a qualification standard . . . or denial of any other term, condition, or privilege of employment." 29 C.F.R. § 1630.2(l)(1). "Establishing that an individual is 'regarded as having such an impairment' does not, by itself, establish liability." *Id*. Liability occurs only if the plaintiff can show that the employer discriminated against the plaintiff by subjecting

him to a prohibited action because of a perceived disability. 29 C.F.R. § 1630.2(l)(3).

### a. Discrimination: Move from Bomb Squad to Homeland Security

Pickard has alleged no facts (other than conclusory statements and hearsay) suggesting that Sgt. Devine influenced the decision to move Pickard and require an exam because of his tremors. *See e.g., Furline v. Morrison*, 953 A.2d 344, 356 (D.C. 2008) ("To prevail on a subordinate bias claim, a plaintiff must establish more than mere 'influence' or 'input' in the decision making process. Rather, the issue is whether the biased subordinate's discriminatory reports, recommendation, or other actions caused the adverse employment action."). He offers no other reason the move was discriminatory or retaliatory. In fact, Pickard has undermined his own allegations because he clearly states that Chief Robinson moved him because of the interpersonal animus between the him and Sgt. Devine. (Doc. 44 at 14, ¶¶ 60-63.) Notably, Pickard was immediately returned to Bomb Squad upon Sgt. Devine's retirement. (Doc. 35-2 at 26, ln. 22-25.) Pickard has failed to demonstrate he suffered an adverse action because of a perceived disability.

### b. Discrimination: Fitness for Duty Examination

Pickard also argues that there is a genuine issue whether the City had an objective basis to make him undergo the fitness for duty examination. (Doc. 43 at 2.) He argues he had never had problems before, had passed prior bomb technician certifications, and his spill of nitromethane was common. (*Id*.) Also, the City should have asked him before subjecting him to the assessment. (*Id.*)

Under the ADA, an employee may be subjected to a medical exam if it is (1) related to the job the employee performs, and (2) is "consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A); 29 C.F.R. § 1630.14. Business necessity is more than simply expediency, "it must be directly connected with, and must substantially promote business necessity and safe performance." *Bentivegna v. U.S. Dept. of Labor*, 694 F.2d 619, 622 (9th Cir. 1982). A defendant can establish a defense against an ADA discrimination claim if "the employer [can] demonstrate that the qualification standard is necessary and related to "the specific skills and physical requirements of the sought–after position." *Cripe v. City*

*of San Jos*e, 261 F.3d 877, 890 (9th Cir. 2001).

Pickard acknowledges that TPD's General Order permits the fitness for duty exam in "those instances in which an employee is unable to perform their assigned duties or *may create a direct threat to themselves or others*." (Doc. 43 at 2 (citing PSOF Ex. 3) (emphasis added).) Moreover, the General Order does not require that TPD discuss its decision prior to subjecting him to the exam, and Pickard does not cite to any regulation or legal requirement that mandates this discussion. (Doc. 44-1 at 22-23.)

The Court finds that in this instance the fitness for duty exam was directly related to Pickard's performance as a Hazardous Devices Technician and was consistent with business necessity. Picard's self–serving claims that he posed no safety threat aside, his own admissions show the opposite. He spilled nitromethane–not once, but twice. His colleagues were concerned that the tremors may have caused the occurrence and were bothered by his blasé response to the possible danger a spill posed to all around him. (Doc. 35-2 at 49 (noting Pickard commented "he hoped the gloves were nitrile gloves and not latex so the chemicals did not eat through the gloves to his hands," and stated, "well, others have spilled too").) It would be contrary to reason to argue that a medical examination determining the severity of his hand tremors was not related to his job or inconsistent with a valid business necessity. Pickard's job is to handle dangerous explosives and chemicals, even weapons of mass destruction. A possible tremor could be lethal to him or those around him. Even though he had passed certifications in the past, that does not preclude him from being evaluated when his actions posed a safety threat. Moreover, as soon as he had cleared the fitness for duty examination, Pickard was returned to full duty.

Furthermore, asking Pickard to undergo a fitness exam out of the concern over a recent spill was a reasonable application of TPD policy and did not subject Pickard to an adverse employment action. *See Clark v. City of Tucson*, No. CV 14-02543-TUC-CKJ, 2018 WL 1942771, at *12 (D. Ariz Apr. 25, 2018) (quoting *Sherman v. Nat'l Grid*, 993 F. Supp.2d 219, 228 (N.D.N.Y. 2014)) ("An employee does not suffer a materially adverse [action] …where the employer merely enforces its preexisting policies in a reasonable

manner.").

Pickard has not demonstrated that the fitness for duty examination was a violation of ADA regulations or an adverse employment action and cannot defeat summary judgment.

## VI. ADA Retaliation Claim

"To state a prima facie case of retaliation, a plaintiff must show that: (1) []he was engaging in a protected activity, (2) the employer subjected h[im] to an adverse employment action, and (3) there was a causal link between the protected activity and the employer's action." *Xin Liu v. Amway Corp.,* 347 F.3d 1125, 1144 (9th Cir. 2003).

Retaliation may be demonstrated through direct or indirect evidence. Direct evidence requires the plaintiff provide "evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption." *Godwin v. Hunt Wesson, Inc.,* 150 F.3d 1217, 1221 (9th Cir. 1998). For indirect evidence, the court analyzes retaliation through the burden shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). If plaintiff can establish the elements of retaliation, "the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its decision. If the defendant articulates such a reason, the plaintiff bears the ultimate burden of demonstrating that the reason was merely a pretext for a discriminatory motive." *Walker v. City of Lakewood*, 272 F.3d 1114, 1128 (9th Cir. 2001) (citations omitted); *see Nilsson*, 503 F.3d at 953-54. Once the defendant has provided a legitimate reason for acting adversely, there is no longer any presumption of discrimination, and the plaintiff must provide a reason why the legitimate acts constitute pretext. *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1123 (9th Cir. 2004).

### a. Retaliation: Move from Bomb Squad to Homeland Security

Pickard claims he was moved to Homeland Security in retaliation for his perceived disability. (Doc. 43 at 11-12.) The City has met its burden by providing a non–discriminatory reason for the move unrelated to his disability: the City moved him because he and Sgt. Devine were unable to get along. This is supported by Pickard's original

allegations in his Complaint, despite his later additions. (Doc. 1 at 9 ¶ 85.) Petitioner made no argument about why this valid reason was pretext other than stating it was close in time to Sgt. Devine's statements that Pickard should be moved because his tremors posed a liability. (Doc. 43 at 12.) However, the reason it was close in time is because Sgt. Devine's hostility had escalated, causing him to make the allegedly discriminatory allegations, which made it clear to Chief Robinson the two could no longer work together. If anything, the timing of the increasingly hostile statements reinforces the City's legitimate reasons for moving Pickard. While the timing may be slightly probative, it is not sufficient to establish pretext. Pickard has not met his burden and his retaliation claim shall be dismissed.

### b. Retaliation: Fitness for Duty Exam

Pickard also claims being subjected to a fitness for duty exam was because of a false belief that Pickard was disabled. The City has shown that the examination was a direct result of the City's concern about Pickard's spill of nitromethane. The City wanted to ensure that Pickard could continue to work and temporarily suspended his contact with explosives and chemicals to procure adequate assurances that Pickard's tremors remained stable. To show pretext Pickard argues that the spills were common (without any viable evidence in support), that it was a minor spill (of nitromethane, a dangerous chemical), and that another officer was told to report any tremor related incidents (which the Court will not consider because it is hearsay evidence). Pickard has not successfully met his burden.

### c. Discrimination and Retaliation: Other Adverse Employment Actions

Finally, Pickard claims that he suffered adverse discriminatory and retaliatory employment actions when he was forced to be driven to the fitness for duty examination and to tell other co–workers why he had been moved to Homeland Security. (Doc. 43 at 13.) This was humiliating. (*Id*.) "Embarrassment [and] harm to reputation . . . d[oes] not impact the terms or conditions of [] employment and are likewise not adverse employment action." *Castro v. Mitchell*, 09 CIV. 3754 WHP, 2011 WL 10901797, at *4 (S.D.N.Y. Aug. 25, 2011), *adhered to on denial of reconsideration sub nom., Castro v. City of New York*, 09 CIV. 3754 PAE, 2012 WL 592408 (S.D.N.Y. Feb. 24, 2012); *Hammond v. Lynwood*

*Unified Sch. Dist.*, CV0705039DDPCTX, 2008 WL 11337726, at *3 (C.D. Cal. Dec. 3, 2008) (humiliation not adverse action); *Flaherty v. Gas Research Inst.*, 31 F.3d 451, 457 (7th Cir. 1994) (same); *Forkkio v. Powell*, 306 F.3d 1127, 1130 (D.C. Cir. 2002) (loss of reputation not adverse action). Pickard has not shown these actions were adverse and has failed to raise a genuine dispute of material fact.

**VII. Conclusion**

In sum, Pickard is unable to adequately support his claim with competent evidence and has failed to show a genuine issue of material fact exists. The Court finds that Pickard's retaliation claim cannot survive summary judgment.

Accordingly, IT IS ORDERED Defendant's Motion for Summary Judgment (Doc. 34) is GRANTED and the case is dismissed with prejudice. The Clerk of Court shall render judgment accordingly and close the case file in this matter.

Dated this 12th day of March, 2019.

Honorable Raner C. Collins
Senior United States District Judge